IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM WOODS,

        Plaintiff,

vs.                                  No. CIV 02-1637 RHS

JO ANNE B. BARNHART, Commissioner
of Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

      THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed July 8, 2003 [Doc. No.14]. The Commissioner denied Plaintiff's request for Supplemental Security Income ("SSI") benefits.

      Plaintiff, age 50, alleges a disability which commenced on July 1, 1990 due to cirrhosis of the liver, gallstones, angina and mental problems. The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") also denied the application, concluding that Mr. Woods had the residual functional capacity for a full range of light work and was therefore not disabled. The Appeals Council denied review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

      At the time of the Commissioner's final decision, claimant was 49 years old, with a high school education. His past relevant work was as an electrical technician, electrical repairman (automobiles) and hotel maintenance worker. Tr. at 11, 77.

The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

Plaintiff contends that the ALJ erred in finding that Plaintiff's mental impairment was non-severe. Mr. Woods also argues that the ALJ's residual functional capacity ("RFC") finding contains several errors.

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted). At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At step five, the burden shifts to the Commissioner to show that the claimant has a Residual Functional Capacity ("RFC") to do work in the national economy other than past relevant work. Thompson at 1487 (citations omitted). The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. The grids reflect the

existence of jobs in the national economy at various Residual Functional Capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. §§404.1566(d); 416.966(d). This aids the Commissioner in determining what specific job types in the national economy the claimant can perform. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

The ALJ determined that the Plaintiff's alcoholic liver disease and angina were severe impairments that rendered him unable to return to his past work, but that he remained capable of performing a full range of light work. Based on application of the Medical-Vocational Guidelines, the ALJ found that Mr. Woods was not disabled. Tr at 15.

**First Alleged Error**

Mr. Woods contends that his mental impairment was not given adequate consideration in the ALJ's determination of nondisability. He argues that the ALJ's finding that his mental problems were not severe was not supported by substantial evidence.

A severe mental impairment is a nonexertional limitation that must be considered by the Commissioner if there is evidence to support the existence of the impairment. Cruse v. U.S. Dep't of Health &Hum. Serv., 49 F.3d 614, 619 (10th Cir.1995); Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991); Williams v. Bowen, 844 F.2d 748, 752 (10th Cir. 1988). A claimant's mental impairment must also be evaluated in combination with the effects of other impairments. Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir. 1991).

On April 2, 2001, the Commissioner referred Mr. Woods to James W. Schutte, Ph.D., for a consultative psychological examination. Dr. Schutte opined that Plaintiff was experiencing an adjustment disorder with mixed anxiety and depressed mood. He also diagnosed alcohol

dependence in sustained full remission. Tr.at 195. Dr. Schutte administered a Wechsler Memory Scale test (WMS-III) which scored Plaintiff's working memory as average, immediate memory as low average and general memory performance in the borderline range. Tr. at 189,192. He observed that Mr. Woods could follow simple instructions and could speak and communicate effectively. Tr. at 190. Dr. Schutte found that Plaintiff was moderately limited in his ability to attend and concentrate and mildly limited in his ability to understand and remember detailed or complex instructions. Tr. at 193.

The ALJ also relied on the opinions expressed by J. Leroy Gabaldon, Ph.D., in a Psychiatric Review Technique Form (SSA-2506-BK) that tracks the procedure set forth in 220 C.F.R.§ 404.1520a. This procedure first requires a determination of the presence or absence of "certain medical findings which have been found especially relevant to the ability to work," sometimes referred to as the "Part A" criteria. 20 C.F.R. § 404.1520a(b)(2). The degree of functional loss resulting from the impairment is then quantified, using the "Part B" criteria. 20 C.F.R. § 404.1520a(b)(3). The reviewing State agency mental health expert compared the evidence concerning Plaintiff's mental impairment with the criteria listed described in the Listing of Impairments and found that Plaintiff's symptoms did not meet the specific diagnostic criteria for organic mental disorder, affective disorder, anxiety disorder, or substance addiction disorder. Tr.at 201. The Part B analysis was continued, however, based on the diagnosis of adjustment disorder, and Dr. Gabaldon concluded that Mr. Woods had mild functional restrictions on his activities of daily living and maintaining social functioning, moderate deficiencies of concentration, persistence or pace and never had episodes of deterioration or decompensation. Tr.at 206. The mental residual functional capacity assessment completed by Dr. Gabaldon rated

Mr. Woods is not significantly limited in twelve and moderately limited in eight categories of basic work activities.

A evidentiary hearing was held on June 11, 2002, at which Plaintiff testified that he a was "depressed all the time, pretty much." Tr.at 39. Mr. Woods stated that he had difficulty concentrating, a short attention span and memory problems. Tr. at 40-41. He explained that he had previously seen a counselor who told him that prescription medication would ordinarily be recommended to treat his condition but that because of his cirrhosis he could not take medication for his mental problems. Tr. at 45. He testified that he was not receiving any ongoing mental health treatment.

The ALJ determined that both Dr. Schutte and Dr. Gabaldon "essentially found the claimant quite able to perform work activity and found no marked or extremely severe limitations that would prevent the claimant from performing work activity." Tr. at 14. Moderate symptoms are not incompatible with the ability to work. 20 C.F.R. 404.1520a (b)(3), 416.920a (b)(3)-(c)(3). These medical opinions provide substantial evidence in support of the ALJ's decision that Mr. Woods did not suffer from a severe mental impairment and the ALJ did not err when he made that determination.

**Second Alleged Error**

Plaintiff contends that the ALJ made several errors in his RFC finding. He argues that the opinions of Dr. Nillo and Dr. Gallardo should have been given less weight and that there is a conflict between his RFC and the Grid rule the ALJ applied to his case.

**A. Consultative Evaluation by Dr. Nillo**

Plaintiff argues that the ALJ erred when he relied upon the opinion of Dr. Nicholas Nillo. Mr. Woods contends that Dr. Nillo may not be qualified to perform physical evaluations.

The New Mexico Board of Medical Examiners on April 19, 2003 lists Dr. Nillo's specialties as emergency medicine, public health and general preventative medicine and occupational medicine. An American Medical Association information sheet dated June 23, 2000 lists his primary specialty as psychiatry. Neither of these documents refers to certification by the American Board of Medical Specialties.

Plaintiff argues that "it appears that, after counsel for Mr. Woods complained about a psychiatrist performing physical evaluations for the state agency, the specialty changed..." The Court has no evidence to support such an assertion. Furthermore, while Dr. Nillo's specialty is relevant to the weight of the evidence, Plaintiff's contention that a licensed MD is not qualified to perform a physical examination is without merit. The consultation report clearly states that Dr. Nillo is not board certified in occupational medicine. Tr. at 181. There were no misrepresentations in the record and the ALJ did not err when he considered Dr. Nillo's opinions.

**B.  Consultative Examination by Dr. Gallardo**

The ALJ also relied upon the assessment provided by Benito Gallardo, M.D., who conducted an examination of Mr. Woods for the Division of Vocational Rehabilitation. Plaintiff contends that the two impairments ( liver disease and angina) which the ALJ found to be severe were not mentioned in Dr. Gallardo's report. Mr. Woods claims that the ALJ relied too heavily on Dr. Gallardo's  assessment because it did not address those impairments.       Although the consulting physician did not use precisely the same terms as the ALJ, Dr. Gallardo noted hepatomegaly on examination and listed it as a disability, Tr. at 176, 178, stated that Plaintiff had a history of cirrhosis, Tr. at 177, 180, and included alcoholic liver disease in the problem list section of his report. Tr. at 179. Dr. Gallardo also mentioned coronary heart disease, Tr. at 176, a

history of heart attack, angina, irregular heart beat and other heart or blood vessel problems, Tr at 177, and ASHD. Tr. at 179. Dr. Gallardo's report

addressed both of the severe impairments identified in the decision and his opinion was given the appropriate weight by the ALJ.

**C. Application of the Sedentary Grid Rule**

The ALJ found that Mr. Woods had an RFC for light work, referred to the Medical-Vocational Guidelines, 20 CFR Pt. 404, Subpt. P, App. 2, Rule 201.21 (the sedentary Grid rule), and concluded that Plaintiff was not disabled. Tr. at 14-16. The Grid rule that is applicable to an individual of Plaintiff's age, education and work experience with a residual functional capacity for light work is Grid Rule 202.21, not 201.21.

Plaintiff argues that because he was within four months of fifty years of age at the time of the ALJ's decision, the sedentary Grid rule dictates a finding of disability. The Commissioner contends that the reference to the sedentary rule rather than the light rule is harmless error.

The regulations preclude a mechanical application of the age categories in a "borderline situation." 20 C.F.R. § 404.1563(a). A borderline situation exists "when there would be a shift in results caused by the passage of a few days or months." Lambert v. Chater, 96 F.3d 469, 470 (10th Cir. 1996) (quoting SSR-82-46c). On the date of the ALJ's decision, Plaintiff was 104 days short of his 50th birthday. A borderline age situation does not exist for light work because Grid Rule 202.14 directs a finding of non-disabled for individuals 50-54 years old, who have a high school education or more, and have past skilled or semi-skilled work and no transferable skills. The issue of whether Plaintiff's age was borderline for the purpose of application of the sedentary Grid rule was not addressed by the ALJ.

The decision repeatedly stated that the ALJ found that Plaintiff was capable of light work Tr. at 14-16. There was no mention of Plaintiff being restricted only to sedentary work in the opinion. The Court concludes that the ALJ's citation of the sedentary Grid rule rather than the light Grid rule in the decision was a typographical or editing error. Having determined that Rule 202.14 was applicable to Plaintiff, the Court finds that the issue of borderline age is not relevant

**Conclusion**

The ALJ's findings that Mr. Woods did not have a severe mental impairment and that he had a residual functional capacity for light work are supported by substantial evidence. The error made by the ALJ regarding the Medical-Vocational Rule applicable to Plaintiff's case does not require reversal or remand.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand [Doc. No.14] is **DENIED** and this cause of action is dismissed with prejudice.

_____
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE